

U.S. COURT OF APPEALS
RECEIVED
CLERK
JUL 31 2023
ATLANTA, GA

UNITED STATES COURT OF APPEALS

ELEVENTH CIRCUIT

ANDREW PASEUR,

       Plaintiff-Appellant,

v.                                    Appeal Number 21-14078-C

UNITED STATES OF AMERICA,

       Defendant-Appellee.

<u>APPEAL OF COURT'S ORDER OF SUMMARY JUDGMENT</u>

I.      Plaintiff, Andrew Paseur, Federal Registration Number 35720-001 is a federal inmate currently incarcerated at the Federal Correctional Institution (FCI) Satellite Low in Jesup, GA. Plaintiff was sentenced on September 5, 2018 to 151 months in Federal Prison. His scheduled release date is January 20, 2028.

Mr. Paseur was originaly placed at FCI Talladega on December 27, 2018. He had a history of trauma to the neck and heel due to a fall in 2007 and a motorcycle accident in 2017. Plaintiff was given a cursory, at best, medical screening when he arrived at the facility in Talladega. Mr. Paseur was not given time to fully discuss his injuries and other medical conditions. Without this information, the medical staff negligently denied Appellant a bottom bunk pass. If they had screened Mr. Paseur under the applicable duty of care, it is possible that they would have issued the bottom bunk pass. Shortly after Mr. Paseur was placed in Talladega, he had a seizure while working at UNICOR. He was treated by the staff there, but the staff negligently failed to report it and did not have Plaintiff evaluated by medical staff. This failure could

be considered deliberate indifference. Several weeks after the seizure, Mr. Paseur fell from the top bunk of his bed, striking his head on a steel table and then the concrete floor. Due to the fall, he suffered a broken eye socket, broken nose, and broken upper palate among other serious injuries. Plaintiff and his cellmate told investigators that the fall occured approximately 4:30 a.m.

Officer Green, who was the officer assigned to Mr. Paseur's unit that night, reported that he performed a 5:00 a.m. count. However, he did not record any issues. If the fall occured according to the timeline of the plaintiff and his cellmate, the officer was grossly negligent in his duties. He should have noticed Mr. Paseur was in distress and acted accordingly. This at least creates an issue of fact that would indicate summary judgment is not appropriate. The Defendant states that officer Green made twenty-three entries in his log book. Presumably as being indicitive of non-negligence.  However, Appellee does not say when these entries were made or what was recorded. The entries may be totally irrelevant or they may demonstrate an issue of fact. At any rate they should at least be examined. Also, Defendant states that the log book shows that the officer saw and counted Mr. Paseur, but there is no evidence of that. If he saw Mr. Paseur at 5:00 a.m., there should have been action at that time. The Officer says he didn't hear anything until a 6:oo a.m. randomized round through the unit. It was at this time, a full hour <u>after</u> the 5:00 a.m. count that Officer Green acted.

Once action was taken, Mr. Paseur was taken to health services and then transferred to a local hospital by ambulance for further evaluation and treatement. At a later interview, both Mr. Paseur and his cellmate reported calling for help for a long period of time prior to the 6:00 a.m. round.

2.

On October 30, 2019, Mr. Paseur timely filed an administrative tort claim with the Bureau of Prisons (BOP) based on the above discribed incident. He sued for $500,000 in damages for negligence in assigning him to an upper bunk and failing to timely respond to his injuries. Mr. Paseur deemed his claim denied after the statutory time had passed. He then filed the instant negligence claim with the U.S. District Court for the Northern District of Alabama Eastern Division on Agust 17, 2020. The Defendant-Appellee filed a special report on December 21, 2020. The Court treated this special report as a motion for summary jugment. Plaintiff filed his Initial Disclosure in Response to Defendant's Special Report on Feruary 25, 2021. The Court issued a final judgment granting Respondent's motion for summary judgment on September 27, 2021. As such, Plaintiff claims were denied or dismissed. The Plaintiff appealed. The Court ordered that Plaintiff's appeal can move forward and a briefing schedule was ordered on June 13, 2023.

II.    <u>NEGLIGENCE</u>

Defendant-Appellee's agency committed at least three acts of negligence that directly caused or worsened Mr. Paseur's injuries. First, the Medical Licensed Practioner (MLP), Mr. Mounir Mourtada did not take the time to discuss Plaintiff's medical conditions in even superficial terms. In fact, he just gave a flipant and inaccurate response. i.e. "we don't do that here." Second Mr. Paseur suffered a seizure while working at UNICOR. He was treated there, but not sent for medical evaluation. Moreover, UNICOR staff never reported the incident. This lack of action is patently against Defendant's Statutory responsibility to protect the health and welfare of inmates. <u>See</u> 18 U.S.C. §4042. If they had reported the seizure and the medical staff did not act negligently, Mr. Paseur would have been assigned a bottom bunk. A Seizure disorder is on of the mandatory reasons to assign a bottom bunk by the BOP's own policies.

3.

(Exhibit 1). Third Officer Green negligently performed his 5:00 a.m. count which exacerbated Mr. Paseur's injury. Assuming Officer Green did in fact perform his 5:00 p.m. count, he would have seen that Appellant was injuried and heard him and his cellmate calling for help. If it is true that they didn't report that they had been trying to get the officer attention for a while at the time action was taken, it is not evidence that they weren't trying. Once the Officer responded, the action would be on assisting Appellant, not how long he was trying to get help. Also, in the urgency to help Mr. Paseur, the Officer may not have reported that he was told how long the Plaintiff and his cellmate were trying to get someone's attention. (Exhibit II).

There is an important discrepency between Officer Greens's estimation of the time of injury and Mr. Paseur's and his cellmate's estimation. This issue of fact is determinative becaue if Mr. Paseur's estimation is correct, Officer Green did breach is statutory duty and acted with deliberate indifference.

III.    <u>SUMMARY JUDGMENT</u>

Summary judgment is only appropriate where the moveant shows that there is no genuine dispute as to any material fact and the moveant is entitled to judgment as a matter of law. <u>Rule 56(a)</u> <u>See Also</u> <u>Psihoyos v. John Wiley and Sons Inc.</u> 748 F.3d 120, 123-124 (2d cir 2014). <u>United States v. Muniz</u>, 83 S.Ct. 1850 (1963) held that the Government is responsible for the negligent acts of its employees. Here the officers, who are agents of the BOP acted negligently or with deliberate indifference with regard to Mr. Paseur on several occasions as described in the prior section. The Courts have held that summary judgment should be used most sparingly. <u>Benningfield. City of Houston</u>, 157 F.3d 369 (5th Cir. 1998). In fact, It should only be applied where the alleged facts fail to state a "plausible" claim for relief. <u>Id.</u> Here the claim is likely, not just plausible. It is the movants burden to show that no genuine factual

4.

dispute exists. <u>Vt. Teddy Bear Comapany v. 1-800 Beargram Co.</u>, 373 F.3d 241, 244 (2d Cir. 2004). "When deciding a motion to dismiss under Rule 12(b)(1) or 12 (b)(6) the Court must accept as true all factual allegations in the complaint and must draw inferences in the light most favorable to the Plaintiff. <u>Scheurer v. Rhodes</u>, 416 U.S. 232 (1974). In determining whether Summary Judgment is appropriate a Court must construe the facts in the light most favorable to the non-moving party and... resolve all ambiguities and draw all inferences against the movant. <u>Brod v. Omya Inc.</u>, 653 F.3d 156, 164 (2d 2011). Therefore, the timeline as to when his injury occured and his seizure at UNICOR should be taken as fact. "The issue on a motion to dismiss is not whether the Plaintiff will prevail, but whether the Plaintiff is entitled to offer evidence to support his claims." <u>U.S. v. Yale New Haven Hospital</u>, 727 F.Supp. 784 (D. Conn. 1990). "The function of a motion to dismiss is merely to assess the feasability, not assay the weight of the evidence. <u>Ryder Energy Distrib v. Merrill Lynch Commodities Inc.</u>, 748 F.2d 744 (D. Conn 1990). A Federal Court considering a summary judgment motion must resolve material fact disputes in favor of the non-moving party. <u>Benn v. Kissane</u>, 134 S. Ct. 78 (2013). The instances of material facts regarding the BOPs negligence that were enumerated in the previous section must be taken as true in a motion for summary judgment. Based on the above discussion Defendant did not meet its burden and Summary Judgment should not have been granted.

IV.    DISCRETIONARY FUNCTION EXCEPTION

The Federal Tort Claims Act 28 U.S.C. §1346(b) provides a remedy against the U.S. for injuries arising out of negligent acts or omissions of government employees acting within the scope of their employment. Appellee states they are exempted from liability because of the the Discetionary Function Exception, §1346(a). That section states, in pertinent part, that a waiver of soverign immunity shall not apply to any claim... based upon the exercise or performance

or failure to exercise or perform a discretionary function or duty on the part
of a federal agency or an employee of the government whether or not the discretion
involved be abused. The circumstance that led to Mr. Paseur's injury were forseeable.
It is common for an inmate to fall from the top bunk and have severe injuries.
See e.g. Brown v. Pastrana, (11th Cir.), Wilson v. Smith, (11th Cir.), and
Edwards v. U.S., (11th Cir.). Defendant knew or should have known about Mr.
Paseur having a seizure and the risk with a top bunk. Lollar. v. Poe, 622 So.2d
902, 905 (Ala. 1993) sets a four part test. 1. defendant owes a duty to plaintiff.
Here that is required by 18 U.S.C. §4042. 2. Defendant breached by failing
to respond to injury. Here that happened not once, but twice. First when the
seizure was not reported and Plaintiff was not sent to medical and again when
Officer Green failed to notice that Plaintiff was seriously injured. 3. The
Plaintiff suffered an injury. Here there are ample medical records to show
a severe injury. 4. Negligence is the actual and proximate cause. Here there
was not only negligence, but deliberate indifference when UNICOR failed to
send Plaintiff to medical and when Officer Green failed to notice that Plaintiff
was injured at the 5:00 a.m. count. See Sosebee v. Murphy, 797 F.2d 179 (1986).
Summary Judgment denied because there was evidence that appellees were deliberately
indifferent to Appellant's need for medical care. This is strikingly similar
to MLP Mourtada flippant dismissal, Officer Green's failure to notice an obvious
medical emergency, and UNICOR's failure to act. For purposes of Summary Judgment
these facts must be deemed true. See U.S. v. Muniz 83 S.Ct. 1850.

The Supreme Court has applied a two step process to determine whether
an act is discretionary. Berkovitz v. U.S., 486 U.S. 531, Ochran v. U.S., 273
F.3d 1315. First is there an element of judgment or choice. Second, is it based
in public policy. Here, the defendant fails both prongs. Plaintiff does not
concede that counts and reporting of injuries are discretionary. However, even

if they are, once engaged they must be done non-negligently. See Muniz. U.S.
v. Gaubert, 499 U.S. 315, 322 requires an inquiry into public policy consderations.
Certainly acting timely and with urgency to a substantial injury and seizure
has public policy implications. The public policy consideration here is squarely
in Plaintiff's favor. It is important for the BOP to be protect the health
and welfare of inmates. So much so, that it is required by 18 U.S.C. §4042.
Furthermore, the public policy to not be viewed as an agency that is deliberately
indifferent to the health and safety of its inmates.

V.    LAW ENFORCEMENT PROVISO

       Even if the Court finds that the discretionary function exception applies,
it is overruled by the law enforcement proviso.  See Nguyen v. U.S.,
556 F.3d 1244, 1260 (11th Cir. 2009). 28 U.S.C. §2680 states that it applies when officers
are engaged in investigative or law enforcement activities. Law enforcement
activities are to be read broadly. See Swanner v. U.S., 309 F.Supp 1183 (M.D.
Ala 1970). Even if not read broadly, rounds and counts are clearly law enforcement
activities. Therefore, the law enforcement proviso applies and summary judgment
should not be granted.

VI. CONCLUSION

       The Federal Torts Claims Act 28 U.S.C. §1346(b) provides a remedy against
the U.S. for injuries arising out of negligent acts or omissions of govenment
employees acting within the scope of their employment. Defendant has not met
their burden of showing no genuine issue of material fact sufficent to grant
a motion for summary judgment. MLP Mourtada was not even remotely thorough
in his examination. Officer Greene failed to notice a clearly injured person.
And UNICOR failed to send Plaintiff to medical after a seizure and then didn't
report it. For the foregoing reasons, Plaintiff requests that this Court overturn
the lower courts order of summary judgment and allow the plaintiff to proceed
with his personal injury claims.

2

In the present litigation, the Respondent has not maintained that his authority to transfer a prisoner to a CCC is derived exclusively from section 3624(c).

3

When questioned at oral argument, the Respondent acknowledged that the BOP could not have considered any of the first four section 3621(b) factors in exercising its discretion categorically.

**8**

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

<u>CERTIFICATE OF SERVICE</u>

I Andrew Paseur, do certify that I have served the Defendant-Appellee with

a copy of this Appeal from the Court's Order of Summary Judgment and my sworn

affidavit, on this 24th day of July, 2023, addressed to:

Clerk of Court

United States Court of Appeals

Eleventh Circuit

56 Forsyth St., N.W.

Atlanta, GA 30303

I declare under penalty of perjury that the above is true and correct, pursuant

to 28 U.S.C. §1746

Mr. Andrew Paseur

Reg No. 35720-001

FCI-Jesup

2680 Highway 301 S

Jesup, GA 31599

Respectfully submitted on this 24th day of July, 2023.

Andrew Paseur

Registration Number 35720-001

Federal Correction Inatitution

FSL

Jesup, GA 31599

EXHIBIT I

In 28 USCS § 2241 case in which there was neither unreasonable delay in holding probable-cause hearing and alleged parole violator had not been prejudiced, appropriate remedy was writ of mandamus to compel U.S. Parole Commission's compliance with statute, not writ of habeas corpus to compel release on parole or to extinguish remainder of sentence. Vactor v. United States Parole Comm'n, 815 F. Supp. 2d 81 (D.D.C. 2011).

USCS                                              2

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

17013104

## LOWER BUNK CRITERIA

ISSUANCE OF LOWER BUNK ASSIGNMENTS

The following list should not be interpreted to mean automatic qualification.  Comprehensive medical evaluation and documentation must support these criteria:

| | | |
|---|---|---|
| M/T** | 1. | Paraplegic or Hemiplegia (wheelchair, canes or crutches) |
| M** | 2. | Seizure Disorder |
| M | 3. | Documented peripheral neuropathy stage III |
| M** | 4. | Arm or leg prosthesis |
| T | 5. | Patients with foot drop and/or AFO brace |
| M** | 6. | Arm or leg casts (90 days after cast removal) |
| T | 7. | Severe DJD/OA/Osteoporosis/Post-Op ORTHO (30-90 days) |
| T | 8. | Obesity  BMI >40 |
| M** | 9. | Laminectomy (up to 180 days post-operative) |
| T | 10. | Patients on multiple psychotropic medications |
| M** | 11. | Patients on Coumadin/Lovenox or Hemophilia |
| M** | 12. | Blind |
| M | 13. | C-PAP machines/Oxygen dependent |
| T | 14. | Recent Hospital Discharges (up to 90 days) |
| M** | 15. | Parkinson's Disease and Multiple Sclerosis |
| M** | 16. | Congenital deformity resulting in inability to use extremity i.e. Polio |
| T** | 17. | Pregnancy and Post-Partum for 45 days. |
| M** | 18. | Hemodialysis/Peritoneal Dialysis/End-Organ Disease/NYHA 3 or 4 |
| T | 19. | Total Joint Replacement (Hip, Knee, and Shoulder)in consultation with Physical Therapist |
| T | 20. | Vestibular dysfunction documented by ENT consultation |

### M-Mandatory        T-Temporary

No permanent lower bunk bed assignments will be issued.  This will allow for Medical Team review for clinical necessity. **Case by Case Review.**

All ~~temporary~~ lower bunk assignments will **be reviewed** and **renewed every 180 days**, at no charge to the inmate.  Inmates assigned to a Chronic Care Clinic (CCC) will be assessed at CCC appointments.  A follow-up appointment for inmates who are not

EXHIBIT II

# Stages of Chronic Kidney Disease

## Stage 5

GFR less than 15: Kidney failure

**Name:** ██████ - D███, C███████

**Role:** Witness

**Age:** ██    **Race:** ██████

**Security Level:** ████████

**Custody Level:** █

**Facility Arrival Date:** ████████

**Projected Release Date:** ████████

**Charges:**

| Description | Sentencing District |
|---|---|
| ████████████████████████████ | ████████████ |

| STGs: | CIMs: |
|---|---|
| ████████████████ | ████████ |

## Victim Statements:

**Date:** 6/25/2019 8:18 AM

**Location:** Housing Unit, Special (SHU)

**Interviewer:** Harvell, W.

**Title:** SIS Technician

**Interviewee:** 35720001 - PASEUR, ANDREW

An interview with inmate Andrew Paseur, Reg. No. 35720-001, was conducted on June 25, 2019, at approximately 8:18 a.m., by W. Harvell, SIS Technician. The interview was conducted in the Special Housing Unit at Federal Correctional Institution at Talladega. Inmate Paseur stated that he fell out of bed. Paseur stated he was not high or on anything. Paseur stated that he remembers when the officer came around at 4:30 a.m. or 5:00 a.m., to do rounds, that's the last thing he remembers. Paseur stated he was not assaulted nor does he have any problems with anyone in general population. Paseur stated that he does not owe anyone. Paseur requested to return to general population.

## Assailant Statements:

**No information was found for the given criteria.**

**Other Statements:**

**Date:** 6/25/2019 8:34 AM                          **Location:** Housing Unit, Special (SHU)

**Interviewer:** Harvell, W.                          **Title:** SIS Technician

**Interviewee:** ██████ - T█████████ , T█

An interview with inmate T██ , T█████ , Reg. No ██████ , was conducted on June 25, 2019, at approximately 8:34 a.m., by W. Harvell, SIS Technician. The interview was conducted in the Special Housing Unit at Federal Correctional Institution at Talladega. Inmate T█████ stated that he was asleep with his ear buds in. T██████ stated that he thinks inmate Andrew Paseur, Reg. No. 35720-001, had a seizure and fell out of bed. T██████ stated that he did not hit or assault Paseur. T██████ stated that he goes to the halfway house in August 2019. T██████ stated that Paseur does not owe anyone, that he is aware of. T██████ stated that Paseur can go back to general population.

**Date:** 6/26/2019 10:15 AM                          **Location:** SIS Office

**Interviewer:** Harvell, W.                          **Title:** SIS Technician

**Interviewee:** ██████ - D█████ , C█

An interview with inmate C█████ , D█████ , Reg. No. ██████ , was conducted on June 26, 2019, at approximately 10:15 a.m., by W. Harvell, SIS Technician. The interview was conducted in the SIS Office at Federal Correctional Institution at Talladega. Inmate D███ stated that he heard a loud bang on the floor that morning. D███ stated it did not sound like anybody fighting. D███ stated staff came right away. D███ stated that he thought inmate Andrew Paseur, Reg. No. 35720-001, had a seizure because he had one in Unicor, in the past. D███ stated all Paseur does is work and play softball. D███ stated Paseur don't mess with anyone. D███ stated Paseur does not owe anyone, that he is aware of. D███ stated that he has never heard or seen Paseur smoke anything. D███ stated Paseur can come back out and doesn't have ant issues with anyone.


**Factual Findings:**

**No item information was found for the given criteria.**

| Type | Subtype | File Name | Original Entered By |
|---|---|---|---|
| Statements & Written Memorandums | Operation's Lieutenant | Lt. Burns memo Paseur.pdf | TF32887 |

On June 11, 2019 at approximately 6:05 am. Sigma-A Unit officer called and stated he had a medical emergency on the a-side. Upon entering Sigma-A Unit with medical. Inmate Paseur Register # 37520-001 was on the floor by the door saying he fell off of the bed. Inmate Paseur was bleeding from his face with multiple injuries. All the blood was by the door. Inmate T██████ was escorted out of the cell by Officer Teel and Lunsford. T██████ stated he didn't hear anything and was searched and placed in the TV room. Inmate Paseur was taken to medical and the cell was photographed by SIS Kennedy. Inmate Paseur said he slipped and fell when from the rail on the bunk. The cell had one drop of blood on the toilet and none on the bed or by the lockers. Inmate Paseur was sent out via ambulance due to head trauma.

| Medical | Inmate Assessments | Paseur medical FCI Talladega.pdf | TF32887 |
|---|---|---|---|

On June 11, 2019, at approximately 6:25 a.m., inmate Andrew Paseur, Reg. No. 35720-001, was medically assessed. Medical staff reported. Nasal trauma, ecchymosis and swelling, Knee bilateral knee multiple abrasion and contusions, no active bleeding.


**Conclusion:**

An investigation revealed insufficient evidence to substantiate a threat to the safety of inmate Andrew Paseur, Reg. No. 35720-001, exists within the general population of FCI Talladega. Interviews suggest no specific inmate made a threat to inmate Paseur. Inmate Paseur stated in his interview that no one assaulted him. A review of Trufone, Trulincs, provided no evidence to support the case.


**Recommendation:**

Based on the aforementioned conclusion, inmate Andrew Paseur, Reg. No. 35720-001, should be released to general population. Should he refuse to return, the appropriate incident report should be issued.

**CIMS Separation Warranted:**  No

**Bureau of Prisons**
**Health Services**
**Cosign/Review**

BLOOD S-B

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | HYLANDER, PHILLIP | | | Reg #: | 17013-104 |
| Date of Birth: | 04/04/1954 | Sex: | M | Race: | WHITE |
| Encounter Date: | 07/22/2021 16:44 | Provider: | Lab Result Receive | Facility: | JES |

**Cosigned with New Encounter Note by Lepiane, R. MD/CD on 07/23/2021 10:13.**

CERTIFICATE OF SERVICE

I Andrew Paseur, do certify that I have served the Defendant-Appellee with

a copy of this Appeal from the Court's Order of Summary Judgment and my sworn

affidavit, on this 24th day of July, 2023, addressed to:

Prim Escalona and Robert C. Pickren

Assistant U.S. Attorneys

1801 4th Avenue North

Birmingham, AL 35203

I declare under penalty of perjury that the above is true and correct, pursuant

to 28 U.S.C. §1746

Andrew Paseur

Mr. Andrew Paseur

Reg No. 35720-001

FCI-Jesup

2680 Highway 301 S

Jesup, GA 31599

Andrew Paseur
Reg # 35720 - 001
FCI Jesup, FSL
2680 Highway 301S
Jesup, GA 31599

Retail

U.S. POSTAGE PAID
FCM LG ENV
JESUP, GA 31546
JUL 25, 2023
$0.00
R2305M149288-07

30303

RDC 99

UNITED STATES
POSTAL SERVICE

CERTIFIED MAIL

7020 2450 0001 3526 9332

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

U.S. MARSHALS SERVICE
Atlanta, GA
CLEARED SECURITY
JUL 3 1 2023

UNITED STATES COURT
of Appeals
Eleventh Circuit
Office of the Clerk
56 Forsyth Street, N.W.
Atlanta, GA 30303

FCI JESUP
JUL 2 5 2023
Mail Room/R&D